ROBERT SOPER & another *vs.* ATLANTIC MUTUAL FIRE AND MARINE INSURANCE COMPANY.

Suffolk. Nov. 12, 1875. — May 5, 1876. ENDICOTT & LORD, JJ., absent.

A settlement was made by the parties to a policy of marine insurance of their mutual demands, including items for partial losses and premiums earned under the

policy, with an agreement that it should be cancelled that day. The vessel insured had then been totally lost, of which fact both parties were ignorant. *Held*, that this settlement was a bar to a claim for the total loss.

CONTRACT upon a policy of marine insurance. The case was submitted to the judgment of the Superior Court, and to this court on appeal, upon an agreed statement of the facts, in substance as follows :

The policy issued by the defendant to the plaintiffs was for an insurance of $3000 on the schooner Thriver and her outfits, for a whaling voyage, the risk commencing on November 21, 1870, and to terminate upon her discharge at her port of discharge in the United States. The Thriver, while on the voyage insured, in 1871 and 1872, met with two partial losses amounting to $827, as made up by the adjuster; and on February 3, 1873, the vessel and the outfits insured were wrecked and totally lost by the perils insured against. The plaintiffs were first informed of the loss about twenty days afterward, and thereupon duly notified the defendant, and, after sixty days from the notice, requested of it payment of the amount of the insurance. This the defendant refused, upon the ground that the policy had been cancelled on February 4, 1873. On that day the parties, the president of the defendant company representing it, and both being ignorant of the loss of the Thriver, had met and made the following arrangement : the defendant claimed that the plaintiffs owed it then $1196 for money collected on premium notes as its agents in procuring marine risks in Boston ; the defendant also claimed $360, being two years' earned premium on said policy, made up to two years from the date of the policy, or thereabouts, that being about the time when the parties began to consider this settlement and specify their respective claims and make their figures, but which settlement was not consummated till February 4, 1873, and the amount of said earned premium was not changed from what it was put down in the beginning ; the defendant also claimed $255 earned premium on a terminated policy on the brig F. H. Moore. The plaintiffs claimed said partial losses on the schooner Thriver, namely, $827. Neither the policy declared upon nor said premium notes were then present ; but it was then agreed that said policy should, when found, be cancelled, as set forth in the receipt here

inafter mentioned, and the cancellation bear date February 4, 1873, and be sent to the defendant. The premium notes were to be given up and sent to the plaintiffs, and the plaintiffs were to pay, and did pay, the defendant $400 cash at that time, and transferred to the defendant what insurance stock they then had in said company, which the defendant shortly after sold at auction for $430, or thereabouts; and the plaintiffs also, at the same time, discharged the defendant from all claims on account of said partial losses, and the parties passed the following receipts:

" Boston, February 4, 1873. Received of the Atlantic Fire & Marine Ins. Co. one dollar and other considerations, in full of all demand for losses claimed on schooner Thriver, and said Soper's stock is hereby transferred to said insurance office as part consideration, and policy on Thriver is to be cancelled this day. R. Soper & Son."

" Boston, Feb. 4, 1873. Rec'd of R. Soper & Son four hundred dollars and other valuable considerations, in full of all claims for moneys collected on premium notes to date, and for notes for premiums on notes on brig F. H. Moore, and for premium notes on schooner Thriver on policy this day cancelled, and all scrip issued to said Soper is to be transferred to said company, and the notes on brig F. H. Moore and on schooner Thriver are to be sent to said Soper on my return to Provincetown. Joshua Paine, President Atlantic Mutual Fire & M. Ins. Co."

About a week afterward the plaintiffs sent the policy to the defendant, having made upon it the following indorsement signed by them: " Boston, Feb. 4, 1873. Cancelled to date."

*L. W. Howes*, for the plaintiffs.

*H. C. Hutchins*, for the defendant.

AMES, J. The settlement which was had between these parties February 4, 1873, has the appearance of being intended as a termination of their dealings with each other, and a final adjustment of their mutual demands. The natural and most obvious inference from the mutual surrender and cancellation of papers would be that, on the one hand, the plaintiffs were released from all liability for any premium on the vessel after the period charged in the settlement, and that on the other hand no

further claim was to be made by them upon the defendant under that policy. *Primâ facie*, the surrender of the policy would signify the surrender of all contingent and unknown claims under it.

It is true that at the date of this settlement neither party knew that the vessel had been lost on the preceding day. But both parties knew that the vessel was on a distant voyage, and was exposed to the perils of the seas. All that they could know was that when she was last heard from she had not been lost. They did not know that she had not been lost since that time. The plaintiffs knew that they were paying for insurance only up to the latter part of the previous November; and they were content to surrender their policy, without making any reservation of any claim under it for any possible or then unknown loss that might have occurred. They knew also that the defendant not only gave up all claim for any premium after the close of the second year of the policy, but also gave up $154 which the defendant had a perfect right to retain as a partial set-off against any further claim which the plaintiffs could in any event make against the defendant. There can be no doubt that the plaintiffs could release contingent and unknown claims, as well as those which had been ascertained, The settlement must have called to their attention the question as to the continuance of the insurance ; and though they did not know the fact of the loss, they at least knew the continuance of the risk. Then was the time for them to insist that they should claim indemnity for any loss that might have occurred, not then known ; and to notify the defendant that, in surrendering the policy, they did not surrender, but intended to reserve, all contingent and possible claims up to that date. Not having done so, they must be con sidered as surrendering not only the policy, but all claims and demands arising therefrom.        *Judgment for the defendant.*